**RETAIL INDUSTRY LEADERS ASSOCIATION, Plaintiff,**

v.

**SUFFOLK COUNTY, Steve Levy in his official capacity as County Executive of Suffolk County, Suffolk County Department of Labor, and Robert W. Dow, Jr. in his official capacity as Commissioner of Labor of Suffolk County, Defendants.**

**No. 06 CV 00531(ADS)(ETB).**

United States District Court, E.D. New York.

July 14, 2007.

Gibson Dunn & Crutcher, New York, NY (Marshall R. King, of Counsel), for the Plaintiff.

Christine Malafi–Suffolk County Attorney, Hauppauge, NY, by: Brian P Callahan, Assistant County Attorney, John Richard Petrowski, Assistant County Attorney, for the Defendants.

Meyer, Suozzi, English & Klein, P.C., New York, NY (Patricia McConnell, of Counsel), Amicus Curiae on behalf of the Defendants, for Health and Welfare Council of Long Island, Medicaid Matters!Maryland and Nassau Suffolk Hospital Council.

Cleary Gottlieb Steen & Hamilton LLP, Amicus Curiae on behalf of the Defendants, New York, NY, for the City Council of the City of New York.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On February 7, 2006, Retail Industry Leaders Association ("RILA" or the "Plaintiff") filed a complaint against Suffolk County, Steve Levy ("Levy"), the Suffolk County Department of Labor (the "Suffolk DOL"), and Robert W. Dow, Jr. ("Dow") (collectively the "Defendants"). On September 28, 2006, the Plaintiff filed an amended complaint seeking a declaratory judgment that the Suffolk County Fair Share for Health Care Act is preempted by the Employee Retirement Income Security Act ("ERISA"); violates the Fourteenth Amendment's Equal Protection clause; and violates New York's wage and hour law.

Presently before the Court are the following motions: (1) the Plaintiff's motion for summary judgment seeking a declaratory judgment that the Suffolk County Fair Share for Health Care Act is preempted by ERISA and conflicts with New York's Minimum Wage Act; and (2) the Defendants' cross-motion for summary judgment seeking dismissal of the Plaintiff's complaint and a declaration that the Suffolk County Fair Share for Health Care Act is valid and enforceable. The Plaintiff also moves for leave to file a brief submitted by the United States Department of Labor in *Retail Industry Leaders Ass'n v. Fielder,* 475 F.3d 180 (4th Cir.2007), as well as leave to file a copy of the Fourth Circuit's decision. Finally, the Health and Welfare Council of Long Island, Nassau Suffolk Hospital Council, Medicaid Matters! Maryland, and the Council of the

City of New York move to file amicus briefs on behalf of the Defendants.

## I. *BACKGROUND*

The following facts are taken from the parties' submissions to this Court, including the Plaintiff's Rule 56.1 statement and the Defendants' counter-statement. The facts set forth are undisputed.

### A. Factual Background

1. *The Suffolk County Fair Share for Health Care Act*

On October 25, 2005, Steve Levy, as Suffolk County Executive, signed into law the Suffolk County Fair Share for Health Care Act, Suffolk County, N.Y., Reg. Local Law §§ 325–1 to 7 (2005) (the "Act"). As originally enacted, the Act required certain large retail stores selling groceries, to make "health care expenditures" for their employees equivalent to not less than $3.00 per hour worked by their employees in Suffolk County. Covered employers who failed to make the mandated expenditures were required to make up the shortfall and pay civil penalties to Suffolk County. Covered employers were further required to file reports annually with the Suffolk DOL detailing (1) "health care expenditures over the prior year; (2) payroll records indicating name, address, job title; and (3) dates and hours worked of each employee during the reporting period." The Act exempted covered employees who had entered into a collective bargaining agreement with a labor union. (Plt. Rule 56.1 statement § 1; Defs. counter-statement § 1; Suffolk County Reg. Local Law § 325–1,3,4).

2. *Retail Industry Leaders Association*

The Plaintiff, RILA, is a trade association representing retailers, manufacturers and service suppliers. More than 400 companies are members of RILA and members operate in all 50 states and employ more than 5 million American workers. Wal–Mart Stores, Inc. ("Wal–Mart") is a member of RILA and operates stores in Suffolk County.

On February 7, 2006, the Plaintiff filed a complaint against the Defendants seeking to enjoin enforcement of the Act, contending that it was preempted by ERISA and by the National Labor Relations Act because it only imposed requirements on employers who declined to enter collective bargaining agreements.

3. *The Amended Suffolk County Fair Share for Health Care Act*

On April 4, 2006, the Suffolk County Legislature adopted amendments to the Act. The Legislature replaced the $3.00 per hour worked health care expenditure requirement with a "public health cost rate." The legislature also repealed the exemption for unionized employers. The amendments further removed the requirement that employers who failed to make the expenditures make up the shortfall. Instead, the amendments provide that employers pay a civil penalty to Suffolk County.

The Act, as amended, requires that covered employers make minimum "employee health care expenditures" equivalent to the "public health care cost rate multiplied by the total number of hours worked" by their employees in Suffolk County. The Act provides that the "public health care cost rate shall be a rate that approximates the cost to the public health care system of providing health care to one uninsured employee." The Act requires that the Suffolk DOL publish the official public health care cost rate by October 1 of each year. (Plt. Rule 56.1 statement § 3; Defs. counter-statement § 3).

Employees covered by the Act include any person working for a covered employer on a full-time, part-time or seasonal basis. The Act excludes managerial, supervisory and confidential employees. The Act prohibits covered employers from "deduct[ing] any payment made pursuant to [the Act] from an employee's wages, salaries, or other compensation" or "reduc[ing] any employee's wages, salaries, or other compensation in order to finance compliance with [the Act]." (Plt. Rule 56.1 statement § 6; Defs. counter-statement § 6; Suffolk County Reg. Local Law § 325–2,3).

The Act defines "health care services" as "primary or secondary medical care or service" and includes, "but are not limited to, inpatient and outpatient hospital services, surgical and medical services, laboratory, diagnostic and x-ray services, prescription drug coverage, annual physical examinations, preventative services, mental health services, substance abuse treatment, vision care, and medical savings accounts." (Plt. Rule 56.1 statement § 7; Defs. counter-statement § 7; Suffolk County Reg. Local Law § 325–2).

The Act defines "health care expenditures" as "any amount paid by a covered employer to employees or to another party for the purpose of providing health care services or reimbursing the cost of such services for employees or family of employees." The Act further defines four alternative categories of "health care expenditures" that satisfy employers' payment obligations: "(i) contributions by a covered employer to a health savings account, as defined under Section 223 of the United States Internal Revenue Code or to any other account having substantially the same purpose or effect without regard to whether such contributions qualify for tax deduction or are excludable from employee income; (ii) reimbursement by a covered employer of health care expenses incurred by its employees or the family of its employees, whether or not the employees had any preexisting entitlement to such reimbursement under any plan, fund or program maintained by the employer; (iii) expenditures made by a covered employer to operate a work place health clinic or to provide any health-related services to employees in the workplace; and (iv) contributions by a covered employer to any federally qualified health center or other community center." Any covered employer whose health care expenditures fall short of the Act's requirements must pay a penalty equal to the shortfall. (Plt. Rule 56.1 statement §§ 7,8; Defs. counter-statement §§ 7,8; Suffolk County Reg. Local Law § 325–2).

Pursuant to the Act, a "covered employer" is defined as "any person that operates at least one retail store located in Suffolk County where groceries or other foods are sold for off-site consumption and where either (1) twenty-five thousand square feet or more of the store's selling area floor space is used for the sale of groceries or other foods for off-site consumption, or (2) 3% or more of the store's selling area floor space is used for the sale of groceries or other foods for off-site consumption and the store contains at least 100,000 square feet of selling area floor space, or (3) [the retail store] had total annual revenues of $1 billion or more in the most recent calendar year and the sale of groceries comprise more than 20% of a company's revenue." The Act includes an express statement of legislative intent to address "double digit increases in Medicaid costs" and "growth in Medicaid spending." (Plt. Rule 56.1 statement § 10; Defs. counter-statement § 10; Suffolk County Reg. Local Law § 325–2).

The Suffolk DOL has authority to enforce the Act by investigating violations, holding administrative hearings and order-

ing the payment of civil penalties. The Act further requires covered employers to file annual reports regarding the number of hours worked by employees and the employer's health care expenditures.

As all parties concede, the Act expressly acknowledges a legislative intent to protect small retailers in Suffolk County from large employers who do not provide health care for employees. Specifically, the Act states that "historically, most retail employers in Suffolk County have provided paid health care for their employees and families but mounting competitive pressures from large employers who do not follow this practice have forced many Suffolk retail employers to eliminate health care coverage." A sponsor of the Act, Legislator Lindsey, stated that "the intent [of the Act] is twofold. Number one, to protect the mom and pops that are scraping by, that the Wal–Marts and the big box stores don't come into a community and blow them away, and to protect employers that have established a standard in the area, that does the right thing by their employees, and that they're not undercut as well." (Plt. Rule 56.1 statement §§ 11,-14; Defs. counter-statement §§ 11,14; Suffolk County Reg. Local Law § 325–1).

In addition, the parties admit that various legislators expressly noted the Act's effect on Wal–Mart. In particular, Legislator Foley referred to "concerns we have about the looming threat of Wal–Mart type stores that have wreaked havoc in a number of communities." Legislator Paul Tonna stated that "it reminds me, I was just watching . . . Back to the Future Part Two and it was—there is a scene when if a certain course of events this guy got to run the town, the whole town would totally disintegrate. And in a certain sense if you look around the communities of the United States, you see that's what Wal–Mart has

done." (Plt. Rule 56.1 statement § 15; Defs. counter-statement § 15).

## B.  Procedural History

As stated above, on September 28, 2006, the Plaintiff filed an amended complaint seeking a declaratory judgment that the Act is preempted by ERISA. Specifically, the Plaintiff contends that the Act is preempted because it mandates that employers provide a certain level of health care benefits; requires employers to provide reports regarding their health care expenditures; and interferes with the uniform national administration of benefit plans. The Plaintiff further claims that the Act violates the Fourteenth Amendment's Equal Protection clause and New York's Wage and Hour law.

The Plaintiff contends that Wal–Mart, a member of RILA, meets the Act's definition of a "covered employer" because it operates stores in Suffolk County in which groceries and other foods are sold for off-site consumption and it has a total annual revenue of more than $1 billion with at least 20% of the revenue produced by the sale of groceries. The Plaintiff further contends that Wal–Mart provides health benefits to its Suffolk County employees through a nationally administered ERISA plan. The Plaintiff claims that in order to comply with the Act, Wal–Mart would be required to establish a separate Suffolk County based health benefits plan administered separately from its ERISA plan.

On October 16, 2006, the Plaintiff moved for summary judgment. The Plaintiff contends that there are no genuine issues of material fact in dispute. In its motion, the Plaintiff contends that the Act should be enjoined because it is preempted by ERISA and it is a mandated benefits law that obstructs the uniform national administration of employee benefit plans. The Plaintiff contends that the Act is both con-

nected with and references ERISA plans because the Act will frustrate ERISA's goal of a single nationwide framework of employee benefits. The Plaintiff argues that the Act impermissibly mandates a level of benefits; interferes with uniform national administration of benefit plans; interferes with ERISA's exclusive remedial scheme by purporting to create a cause of action for violations of the Act; and creates conflicting directives among states.

The Plaintiff claims that "local governments cannot circumvent ERISA preemption through the expedient of adding an incidental non-ERISA reference to a law that otherwise predominately refers to ERISA plans." In addition, the Plaintiff contends that the Act's purported alternatives to an ERISA plan are an illusory attempt to evade ERISA preemption. The Plaintiff claims that the Act also makes impermissible reference to ERISA-covered plans because all employers fund employee health care through ERISA plans; any law requiring a systematic employer program for funding health care benefits has an improper reference to ERISA plans; and the Act's definition of employers' obligations mirrors ERISA's definition of employee welfare plans.

The Plaintiff further contends that the Act is preempted because it imposes reporting requirements over and above those prescribed by ERISA. The Plaintiff contends that "every dollar in health care expenditures that the Act mandates will be provided through an ERISA plan." In this regard, the Plaintiff submitted an affidavit from Gregory Goggans, Wal–Mart's Director of United States Benefits Design. Goggans affirms that Wal–Mart is covered by the Act and that in order to comply with the Act, Wal–Mart would have to alter its benefits structure to create a separate Suffolk County funding plan. Goggans further affirms that Wal–Mart would

not donate money to the community, contribute to health savings accounts or establish on-site clinics, set forth as alternatives in the Act, but instead would choose to spend the additional amounts on healthcare for its own employees.

In addition, the Plaintiff contends that the Defendants cannot save a mandated benefit law from preemption by utilizing exceptions that would never be invoked by covered employers. Further, the Plaintiff contends that the Act is invalid because it conflicts with New York's Minimum Wage Act. The Plaintiff relies upon *Retail Indus. Leaders Ass'n v. Fielder*, 435 F.Supp.2d 481 (D.Md.2006), in which a federal District Court in Maryland struck down a similar law on the ground of ERISA preemption.

The Defendants oppose the Plaintiff's motion and cross-move for summary judgment dismissing the amended complaint. The Defendants agree that there are no genuine issues of material fact in dispute. The Defendants contend that "[t]he primary issue to be resolved on these motions is whether the 'Suffolk County Fair Share for Health Care Act' ... is preempted by the Employee Retirement Income Security Act." The Defendants contend that the Act is not preempted by ERISA.

The Defendants contend that the Act was enacted to reduce Suffolk County's financial burden of subsidizing health care for residents. According to the legislative intent quoted by the Defendants "the purpose of this law is to require that all covered employers spend a minimum level of funding on health care for employees based on the number of hours worked in the year, thereby reducing the burden on County residents who are employees in low wage positions and County taxpayers."

The Defendants contend that state law is not preempted by ERISA where the existence of a plan is not necessary to be

in compliance with the state law. The Defendants claim that the Act does not require the establishment of an ERISA plan or modification of an existing ERISA plan. The Defendants contend that while compliance with the Act may be accomplished by depositing funds into an existing plan, the employer may alternatively contribute to a health savings account; reimburse health care expenses; provide health services in the workplace; or contribute to a community health center. As a result, the Defendants assert that containing health care costs is a traditional area of state regulation and the Act is not preempted by ERISA.

With regard to the Plaintiff's reliance on the District of Maryland's recent decision in *Fielder*, the Defendants contend that the *Fielder* case was wrongly decided. Further, the Defendants assert that the Act specifically provides a very simple means of compliance; covered employers can make a lump sum donation to a community health center equal to the number of hours worked by employees multiplied by the public health cost rate set by the Suffolk DOL.

### C. The Parties' Supplemental Submissions

Following submission of its summary judgment motion, the Plaintiff moved to file a Brief of the Secretary of Labor As Amicus Curiae (the "Secretary's Brief"), which was filed on November 6, 2006 in the Fourth Circuit Court of Appeals in the *Fielder* case which was on appeal at that time. In addition, the Council of the City of New York, the Health and Welfare Council of Long Island, Medicaid Matters! Maryland, and the Nassau Suffolk Hospital Council, moved to file amicus curiae briefs on behalf of the Defendants. Finally, following the Fourth Circuit's decision in *Retail Industry Leaders Ass'n v. Field-*

*er*, 475 F.3d 180 (4th Cir.2007), affirming the decision of the District Court, the Plaintiff moved to supplement the record by submitting a copy of that decision.

Despite various objections by the parties to the filing of the amicus briefs and the Secretary's Brief, the Court has reviewed and considered all of the parties' supplemental submissions.

## II. *DISCUSSION*

### A. The Summary Judgment Standard

■ Summary judgment is appropriate if the record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265 (1986); *Wilkinson v. Russell*, 182 F.3d 89 (2d Cir.1999); *Turner v. General Motors Acceptance Corp.*, 180 F.3d 451 (2d Cir.1999); *In Re Blackwood Associates, L.P.*, 153 F.3d 61, 67 (2d Cir.1998) (citing Fed.R.Civ.P. 56(c)). "Federal preemption of state law presents a question of law for the court to decide and is therefore appropriate for resolution on a motion for summary judgment." *Pac. Capital Bank, N.A. v. Connecticut*, No. 3:06–CV–28, 2006 WL 2331075, *3, 2006 U.S. Dist. LEXIS 55627, at *10 (D.Conn. Aug. 10, 2006) (citing *Bank of Am. v. City and County of San Francisco*, 309 F.3d 551, 557 (9th Cir.2002)).

In deciding a summary judgment motion, the district Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986); *Amato v. City of Saratoga Springs*, 170 F.3d 311, 322 (2d Cir.1999) (citing *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir.1997));

Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc., 150 F.3d 132, 137 (2d Cir. 1998) (citing *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir.1988)). Disputed facts that are not material to the issue at hand will not defeat summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If there is evidence in the record, including affidavits, exhibits, interrogatory answers, and depositions, as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Lane v. New York State Electric & Gas Corp.*, 18 F.3d 172, 176 (2d Cir.1994).

Notably, "the trial Court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried").

## B. As To ERISA Preemption of State Law

"ERISA established a comprehensive federal statutory program intended to control abuses associated with pension benefit plans." *Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 22 (2d Cir. 1996). "ERISA is designed to provide comprehensive and uniform regulation of employee benefit plans by imposing requirements for reporting, disclosure and fiduciary responsibility once an employer chooses to provide benefits, but it does not require employers to provide any particular benefits." *HMI Mech. Sys. v. McGowan*, 266 F.3d 142, 148 (2d Cir.2001) (citing *Burgio and Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d 1000, 1007–08 (2d Cir.1997)).

"While federal laws generally do not preempt state action in fields of traditional state regulation, the preemption language of ERISA is expansive." *Id.* ERISA "supersedes 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [that ERISA covers].'" *Id.* (citing 29 U.S.C. § 1144(a)). It preempts "all state laws that relate to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA." *Id.* (internal citations omitted). "A state law relates to employee benefit plans when it has connection with or reference to such plans, whenever it purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans." *Id.* (internal citations omitted).

"The preemption language of ERISA § 514(a) is 'deliberately expansive.'" *Burgio & Campofelice*, 107 F.3d at 1007 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). "Pre-emption does not occur, however, if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans." *Id.* "Where a legal requirement may be easily satisfied through means unconnected to ERISA plans, and only relates to ERISA plans at the election of an employer, it 'affects employee benefit plans in too tenuous', remote, or peripheral a manner to warrant a finding that the law

'relates to' the plan.' " *Id.* at 1009 (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). Specifically, Courts must determine whether state laws reference or have a connection to an ERISA plan. *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997).

■ "One of the principal goals of ERISA is to enable employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.' " *Egelhoff v. Egelhoff,* 532 U.S. 141, 148, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (citing *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). Significantly, "[u]niformity is impossible, however, if plans are subject to different legal obligations in different States." *Id.* As stated by the Court in *Fort Halifax:*

> In *Standard Oil Co. of California v. Agsalud,* 633 F.2d 760 (C.A.9 1980), summarily aff'd, 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981), for instance, Hawaii had required that employers provide employees with a comprehensive health care plan. The Hawaii law was struck down, for it posed two types of problems. First, the employer in that case already had in place a health care plan governed by ERISA, which did not comply in all respects with the Hawaii Act. If the employer sought to achieve administrative efficiencies by integrating the Hawaii plan into its existing plan, different components of its single plan would be subject to different requirements. If it established a separate plan to administer the program directed by Hawaii, it would lose the benefits of maintaining a single administrative scheme. Second, if Hawaii could demand the operation of a particular bene-
>
> fit plan, so could other States, which would require that the employer coordinate perhaps dozens of programs. *Agsalud* thus illustrates that whether a State requires an existing plan to pay certain benefits, or whether it requires the establishment of a separate plan where none existed before, the problem is the same. Faced with the difficulty or impossibility of structuring administrative practices according to a set of uniform guidelines, an employer may decide to reduce benefits or simply not to pay them at all.

*Fort Halifax Packing Co. v. Coyne,* 482 U.S. at 12–13, 107 S.Ct. 2211.

The Supreme Court has addressed the issue of ERISA's preemption of state laws in a number of cases. In *Shaw,* the New York state law at issue required employers to structure employee benefits plans to provide the same benefits for pregnancy related disabilities as for other types of disabilities. 463 U.S. at 88, 103 S.Ct. 2890. The Supreme Court determined that the law would interfere with the employer's administration of its ERISA plan and found that the law was preempted. *Id.* at 108, 103 S.Ct. 2890.

Similarly, in *Egelhoff,* the Supreme Court held that ERISA preempted a state statute that voided the designation of a spouse as a beneficiary of a non-probate asset, including ERISA governed insurance policies. The law required plan administrators to pay insurance benefits to beneficiaries chosen by state law rather than those set forth in plan documents. *Egelhoff,* 532 U.S. at 147, 121 S.Ct. 1322. The Court noted that similar laws would undermine ERISA's objective of sparing plan administrators from monitoring the differing laws of the states and modifying plans accordingly. *Id.* at 150–51, 121 S.Ct. 1322. Moreover, in *Egelhoff,* the Court determined that even a state law which

provides a means for ERISA plans to avoid the state law requirements is still preempted if taking that option would be disruptive to the uniform plan administration. *Id.* at 151, 121 S.Ct. 1322.

In *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), the Supreme Court reviewed a "New York statute requir[ing] hospitals to collect surcharges from patients covered by a commercial insurer but not from patients insured by a Blue Cross/Blue Shield plan." 514 U.S. at 649, 115 S.Ct. 1671. As a result of the law, Blue Cross and Blue Shield became a cheaper and more attractive option for ERISA plans to purchase. *Id.* at 659, 115 S.Ct. 1671. The Supreme Court determined that the law did not act directly upon an ERISA plan, but indirectly influenced the plans. *Id.* The Court noted that the law gave an incentive to choose Blue Cross and Blue Shield, but it did not preclude uniform nationwide plan administration. *Id.* at 662, 115 S.Ct. 1671. As a result, the Court determined that the law was not preempted by ERISA. *Id.* at 662, 115 S.Ct. 1671. However, the Supreme Court acknowledged that a state law could be preempted, despite only an indirect effect, if it forced an ERISA plan to adopt a scheme or restrict choices of insurers. *Id.* at 668, 115 S.Ct. 1671.

In *Dillingham,* the Supreme Court reviewed a California law that regulated wages contractors paid to apprentices on public construction projects. 519 U.S. at 319, 117 S.Ct. 832. The law at issue allowed contractors to pay apprentices lower wages if they participated in state certified apprentice programs. *Id.* The Court found that by allowing contractors to pay lower wages, the law created an indirect incentive for ERISA plans to obtain state certification. The Court determined that the incentive to seek certification was not

strong enough to eliminate the choice regarding whether to seek certification. *Id.* at 334, 117 S.Ct. 832. The Court found that the law was similar to the New York statute upheld in *Travelers* and determined that it was not preempted by ERISA. *Id.*

## C. The District Court's Decision in *Retail Industry Leaders Association v. Fielder*

Although the Supreme Court's analyses in *Shaw, Egelhoff, Travelers* and *Dillingham* are instructive precedent, in *Retail Industry Leaders Association v. Fielder,* 435 F.Supp.2d 481 (D.Md.2006), *aff'd* 475 F.3d 180 (4th Cir.2007), a case discussed by both parties in their submissions, and by this Court previously in this Decision, the District of Maryland recently addressed the ERISA preemption of a Maryland state law substantially similar to the Suffolk County law at issue in the present case.

In *Fielder,* RILA brought an action for declaratory and injunctive relief against the Maryland Secretary of Labor (the "Secretary"), seeking a declaration that the Maryland Fair Share Health Care Fund Act (the "Maryland Act") was preempted by ERISA. As in the present case, RILA filed a motion for summary judgment and the Secretary cross-moved for summary judgment.

In *Fielder,* the District Court found that in 2006, Maryland enacted the Fair Share Act, which applied to non-governmental employers of 10,000 or more people in Maryland, and required that for profit employers who "do[ ] not spend up to 8% of the total wages paid to employees in the State on health insurance costs shall pay to the Secretary an amount equal to the difference between what the employer spends for health insurance costs and an amount equal to 8% of the total wages paid

to employees in the State." 435 F.Supp.2d at 484 (citing Md.Code Ann. Lab. & Empl. § 8.5–104(b)). The Maryland Act further required employers "to report annually [their] total number of employees in the state, the amount spent by the employer on health insurance costs, and the percentage of payroll spent by the employer on health insurance costs." *Id.* (citing Md. Code Ann. Lab. & Empl. § 8.5–103).

The Court noted that Wal–Mart, a member of RILA, would be affected by the Maryland Act and that according to a declaration submitted by Gregory Goggans, Wal–Mart's Director of United States Benefits, Wal–Mart never made contributions to the health care plans offered to its Maryland employees that were equal to or greater than 8% of the total compensation paid to Maryland employees. *Id.* at 485. Following the Defendant's challenges to standing, ripeness and jurisdiction, the Court determined that RILA had standing; the action was ripe; and the Court had jurisdiction.

The Court found that the Maryland Act created health care spending requirements not applicable in other jurisdictions and in conflict with requirements of other jurisdictions, including Suffolk County and New York City. *Id.* at 494. In addition, the Court noted that, as a result of the Maryland Act, Wal–Mart would have to segregate a separate pool of expenditures for Maryland employees and structure contributions "with an eye to how this will affect the Act's 8% spending requirement." *Id.* at 495. The Court found that the Maryland Act would force Wal–Mart to increase contributions to its ERISA plan. *Id.*

As such, the Court determined that the Maryland Act was preempted by ERISA. *Id.* The Court noted "[m]y finding that the Act is preempted is in accordance with long established Supreme Court law that state laws which impose employee health or welfare mandates on employers are invalid under ERISA." *Id.* The Court found that the Maryland Act violated "ERISA's fundamental purpose of permitting multistate employers to maintain nationwide health and welfare plan, providing uniform nationwide benefits and permitting uniform national administration." *Id.* at 496.

As in the present case, the defendant in *Fielder* argued that the Maryland Act did not mandate that employers increase contributions to ERISA plans, because the Maryland Act provided various non-ERISA alternatives. One option was that employers could contribute to health savings accounts. *Id.* at 497. However, the Court rejected this as a viable option noting that health savings accounts fall outside the definition of ERISA plans only if the establishment of the accounts is completely voluntary. *Id.* The Court found that the second option for employers under the Maryland Act, spending an amount equal to the requisite percentage of its payroll on first aid facilities, was completely unrealistic. *Id.* The Court found that health care is offered by Wal–Mart, and other companies affected, through ERISA plans. *Id.* The Court noted that it demeaned the seriousness of the Maryland Act to suggest that it would address health care issues and cost issues by constructing first aid facilities to aid employees with minor injuries. *Id.*

Finally, the Court examined the Maryland Act's third option, that employers pay the state the difference between its actual health care expenditures and the amount required by the Maryland Act. *Id.* The Court found that no rational employer would choose to pay money to the state rather than to its own employees in the form of health care. *Id.* Moreover, the Court noted that in his declaration, Goggans affirmed that Wal–Mart would in-

crease contributions to employees' ERISA plans rather than pay money to the state. *Id.* The Court concluded that "[t]he choice here is a Hobson's choice." *Id.*

The Court granted RILA's motion for summary judgment and declared that the Maryland Fair Share Act was preempted by ERISA.

### D. The Fourth Circuit's Decision in Retail Industry Leaders Association v. Fielder

On January 17, 2007, the Fourth Circuit Court of Appeals affirmed the District Court's decision in *Fielder. Retail Industry Leaders Ass'n v. Fielder,* 475 F.3d 180 (4th Cir.2007). The Fourth Circuit found that the Maryland Act "effectively requir[ed] employers in Maryland covered by the Act to restructure their employee health insurance plans," and, as a result "it conflicts with ERISA's goal of permitting uniform nationwide administration of these plans." *Id.* at 183.

The Fourth Circuit determined that "[w]hile an employer's one-time grant of some benefit that requires no administrative scheme does not constitute an ERISA 'plan,' a grant of a benefit that occurs periodically and requires the employer to maintain some ongoing administrative support generally constitutes a 'plan.'" *Id.* at 190. The Fourth Circuit found that "[b]ecause the definition of an ERISA 'plan' is so expansive, nearly any systematic provision of healthcare benefits to employees constitutes a plan." *Id.* at 190–91. The Court determined that "[t]he language of ERISA's preemption provision—covering all laws that 'relate to' an ERISA plan—is 'clearly expansive.'" *Id.* at 191.

Specifically, the Fourth Circuit determined that "Courts have readily and routinely found preemption of state laws that act directly upon an employee benefit plan or effectively require it to establish a par-

ticular ERISA-governed benefit." *Id.* at 192. The Court further determined that "[a] state law that directly regulates the structuring or administration of an ERISA plan is not saved by inclusion of a means for opting out of its requirements." *Id.*

After reviewing the Maryland Act, the Court of Appeals determined that the only rational choice for employers is to structure their ERISA benefit plans to meet the Maryland Act's minimum spending threshold. *Id.* at 193. The Court found a connection with the employee benefit plans and determined that the Act was preempted by ERISA. *Id.* at 193–94. The Court further determined that its view was supported by the legislative history of the Act, demonstrating that Maryland intended that the Act compel Wal–Mart to increase its healthcare spending. *Id.* at 194.

The Fourth Circuit noted that the Maryland Act would require Wal–Mart to segregate a separate pool of money for Maryland employees. *Id.* According to the Fourth Circuit, "[t]his problem would not likely be confined to Maryland. As a result of similar efforts elsewhere to pressure Wal–Mart to increase its healthcare spending, other States and local governments have adopted or are considering healthcare spending mandates that would clash with the Fair Share Act." *Id.* As a result, varying state laws would make uniform plan administration impossible. As an example of such legislation, the Fourth Circuit cited the Suffolk County statute at issue in this case. *Id.* The Fourth Circuit noted that "[i]f permitted to stand, these laws would force Wal–Mart to tailor its healthcare benefit plans to each specific State, and even to specific cities and counties. This is precisely the regulatory balkanization that congress sought to avoid by enacting ERISA's preemption provision." *Id.*

The Fourth Circuit found that the alternative options provided to employers pursuant to the Maryland Act were not meaningful alternatives by which employers could increase healthcare spending without affecting ERISA plans. *Id.* at 196. The Fourth Circuit noted that although employers could establish on-site medical clinics, non-ERISA clinics could only treat minor injuries and that low level of care was not a serious means to increase healthcare spending. *Id.* Although covered employers could also contribute to health savings accounts, for employers' contributions to such accounts to be exempt from ERISA, the health savings accounts must be established voluntarily. *Id.*

Further, the Court determined that the Maryland Act's option permitting employers to pay the state, was actually a fee or penalty, giving employers an incentive to provide employees with greater health benefits. *Id.* at 197. Moreover, the Court noted that the effect of the Act is to force employers to structure record keeping and benefit spending to comply. The Court found the requirements would result in disruption of the uniform administration of benefits. *Id.*

The Court further noted that even if the health savings accounts and on-site clinics were viable options, the Maryland Act still had an impermissible connection with ERISA. *Id.* at 196. The vast majority of healthcare spending occurs through ERISA plans and even if employers could utilize the non-ERISA options, they would still need to coordinate spending efforts with their existing ERISA plans; monitor the laws of other jurisdictions; and structure plans to comply. *Id.* at 196–97. As such, the Court found that the Maryland Act was preempted by ERISA.

## E. As To The Suffolk County Fair Share Act

Although this Court is not bound by the decision of the Fourth Circuit in *Fielder*, the Act at issue in the present case is substantially similar to the Maryland Act addressed by the *Fielder* Court. *Blair v. Deboo*, No. 3:04CV1357, 2004 WL 3052022, *2, 2004 U.S. Dist. LEXIS 26235, at *7 (D.Conn. Dec. 30, 2004) ("the Court is not bound by the decisions of any courts other than the Second Circuit Court of Appeals and the United States Supreme Court"); *O'Neill v. Auburn*, No. 93–CV–100, 1993 WL 293988, *12, 1993 U.S. Dist. LEXIS 10958, at *40, n. 7 (N.D.N.Y. Aug. 2, 1993) ("Although not bound by decisions of other circuits, the court reviewed recent decisions by courts in those circuits that had faced this issue"). Further, for the following reasons, this Court is in accord with the Fourth Circuit's well reasoned and comprehensive analysis.

■ In the present case, the Act requires that covered employers make minimum "employee health care expenditures" equivalent to the "public health care cost rate multiplied by the total number of hours worked" by its employees in Suffolk County. Covered employers are provided five options to comply with the Act. The covered employer can contribute additional amounts to an ERISA plan; contribute to a health savings account; reimburse health care expenses; provide health services in the workplace; or contribute to a community health center. The strikingly similar Maryland statute requires covered employers to spend 8% of their payrolls on employee health insurance costs or pay that amount to the state. The Maryland law further provides that in order to comply, covered employers can maintain on-site medical clinics; contribute to employees' health savings accounts; or pay the owed amount directly to the state.

In agreement with the determination of the Fourth Circuit, this Court finds that the Act is preempted by ERISA. Although the Act provides employers with various alternative options to comply with the Act, "the only rational choice employers have under [the Act] is to structure their ERISA healthcare benefit plans so as to meet the minimum spending threshold." *Fielder*, 475 F.3d at 193. As in *Fielder*, in the present case it is clear from the Act's legislative history that Suffolk County enacted it in order to mandate that covered employers and, specifically, Wal–Mart, increase spending on healthcare coverage for Suffolk County employees.

Although the Defendants argue that the Act provides employers with options separate and apart from altering or contributing to their ERISA plans, and therefore, is not preempted by ERISA, this argument is without merit. As the Fourth Circuit determined, the options provided in the Act, "are not meaningful alternatives by which an employer can increase its healthcare spending to comply with the Fair Share Act without affecting its ERISA plans." *Fielder*, 475 F.3d at 196. First, although employers may contribute to health savings accounts pursuant to the Act, health savings accounts must be established voluntarily by the employee. As a result, there is no guarantee that such accounts would be created. As the Fourth Circuit determined, "[t]his would likely shrink further the potential for Health Savings Accounts contributions as many employees would not undertake to establish Health Savings Accounts." *Id.* As a result, health savings accounts are not a realistic method for employers to ensure compliance with the Act.

Similarly, on-site health services also presents an unrealistic, impractical option for covered employers. In order for a covered employer to establish an on-site health clinic that would not be covered by ERISA, the sole purpose of the clinic would have to be "the treatment of minor injuries or illness or rendering first aid in case of accidents occurring during working hours." *Id.* at 196 (citing 29 C.F.R. § 2510.3–1(c)(2)). To avoid the application of ERISA, the on site clinic may not treat employees' family members or employees for anything more serious than a minor injury. *Id.* As the Fourth Circuit determined, this "simply would not be a serious means by which employers could increase healthcare spending to comply with [the Act]". *Id.*

In addition, the Act provides that employers can contribute to a community health center. In fact, the Defendants rely upon this provision of the Act, noting that covered employers could simply write checks for the amount owed to a community health center in order to comply with the Act and avoid ERISA. The Defendants claim that this option "allows for the simplest way to comply with the [Act]". However, as set forth in the declaration submitted by Goggans, Wal–Mart would not contribute to a community health center, instead of to an employee's health plan. In fact, it is unreasonable to expect employers to contribute to the community or directly to the state, rather than to their own employees. The Fourth Circuit also found this option to be unrealistic. *Fielder*, 475 F.3d at 197.

In addition, although the Act provides that employers can reimburse employees for health care expenses, as noted by the Plaintiff, such reimbursement would require a plan and plan administration in order to ensure that employers regularly paid such benefits. As the Supreme Court noted in *Egelhoff*, even a state law which provides a means for ERISA plans to avoid the state law requirements is still preempted if taking that option would be

disruptive to the uniform plan administration. *Egelhoff*, at 151, 121 S.Ct. 1322. Employers utilizing new plans to pay health care expenses directly to employees would disrupt uniform plan administration.

Clearly, the alternative options for compliance with the Act are unrealistic and, with reasonable certainty, would be very difficult for covered employers to utilize. The Act was enacted to require covered employers to provide increased medical benefits to employees. In order to do so, employers such as Wal–Mart must "change how they structure their employee benefit plans." *Fielder*, 475 F.3d at 197. As the Fourth Circuit found, "[t]he effect of this provision will force employers to structure their recordkeeping and healthcare benefit spending to comply with the Fair Share Act. Functioning in that manner, the Act would disrupt employers' uniform administration of employee benefit plans on a nationwide basis." *Fielder*, 475 F.3d at 194. As Wal–Mart represented to this Court, the amount of contribution required by the Act is more than Wal–Mart currently contributes and therefore, would require that Wal–Mart make a different expenditure for employees in Suffolk County than it does for employees in other states.

After eliminating the various unrealistic alternatives for compliance, all that is left is for covered employers is to increase contributions to ERISA plans. As the Fourth Circuit found,

> [t]he undeniable fact is that the vast majority of any employer's healthcare spending occurs through ERISA plans. Thus, the primary subjects of the [Act] are ERISA plans, and any attempt to comply with the Act would have direct effects on the employer's ERISA plans. If Wal–Mart were to attempt to utilize non-ERISA health spending options to satisfy the [Act], it would need to coordi-

nate those spending efforts with its existing ERISA plans ... From the employer's perspective, the categories of ERISA and non-ERISA healthcare spending would not be isolated, unrelated costs. Decisions regarding one would affect the other and thereby violate ERISA's preemption provision.

*Fielder*, 475 F.3d at 197.

As in *Shaw* and *Egelhoff*, the present Act would interfere with employers' administration of their ERISA plans because employers would have to vary benefits for New York employees; the law would inhibit the administration of a uniform plan nationwide; and the law would disrupt uniform plan administration. In order to comply, employers would be required to alter their ERISA plans to meet the spending requirements of the Act. Moreover, "differing state regulations affecting an ERISA plan's system for processing claims and paying benefits impose precisely the burden that ERISA pre-emption was intended to avoid." *Egelhoff*, 532 U.S. at 150, 121 S.Ct. 1322.

As such, "the Act has an obvious 'connection with' employee benefit plans and so is preempted by ERISA." *Fielder*, 475 F.3d at 193–94.

### F.   As To The Remaining Claims

The Plaintiff also contends that the Act violates New York's Minimum Wage Act. However, as the Court has determined that the Act is preempted by ERISA, the Court declines to address this claim.

### III.   *CONCLUSION*

Based on the foregoing, it is hereby

**ORDERED,** that the Plaintiff's motion for summary judgment under Rule 56 of the Fed.R.Civ.P. is **GRANTED;** and it is further

ORDERED, that the Defendants' cross-motion for summary judgment dismissing the amended complaint is **DENIED;** and it is further

ORDERED, that it is declared that the Suffolk County Fair Share Act is preempted by **ERISA;** and it is further

ORDERED, that the Clerk of Court is directed to close this case.

SO ORDERED.