**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GOLDEN GATE RESTAURANT
ASSOCIATION, an incorporated non-
profit trade association,
               *Plaintiff-Appellee,*

v.

CITY AND COUNTY OF SAN
FRANCISCO,
                 *Defendant,*

and

SAN FRANCISCO CENTRAL LABOR
COUNCIL; SERVICE EMPLOYEES
INTERNATIONAL UNION, HEALTHCARE
WORKERS-WEST; SERVICE
EMPLOYEES INTERNATIONAL UNION,
LOCAL 1021; UNITE HERE LOCAL 2,
  *Defendant-intervenors-Appellants.*

No. 07-17370

D.C. No.
CV-06-06997-JSW

GOLDEN GATE RESTAURANT
ASSOCIATION, an incorporated non-
profit trade association,
                    *Plaintiff-Appellee,*

v.

CITY AND COUNTY OF SAN
FRANCISCO,
                    *Defendant-Appellant,*

and

SAN FRANCISCO CENTRAL LABOR
COUNCIL; SERVICE EMPLOYEES
INTERNATIONAL UNION, HEALTHCARE
WORKERS-WEST; SERVICE
EMPLOYEES INTERNATIONAL UNION,
LOCAL 1021; UNITE HERE LOCAL 2,
                    *Defendant-intervenors.*

No. 07-17372

D.C. No.
CV-06-06997-JSW

ORDER DENYING
PETITION FOR
REHEARING EN
BANC

Filed March 9, 2009

Before: Alfred T. Goodwin, Stephen Reinhardt, and
William A. Fletcher, Circuit Judges.

Order;
Concurrence by Judge W. Fletcher;
Dissent by Judge Milan D. Smith, Jr.

**ORDER**

Judge Reinhardt and Judge Fletcher voted to deny the petition for rehearing en banc, and Judge Goodwin so recommended.

A judge of the court called for a vote on the petition for rehearing en banc. A vote was taken, and a majority of the active judges of the court failed to vote for en banc rehearing. Fed. R. App. P. 35(f). Judge Berzon was recused.

The petition for rehearing en banc, filed October 22, 2008, is DENIED.

---

W. FLETCHER, Circuit Judge, concurring in the denial of rehearing en banc:

A majority of the active judges of our court declined to vote for rehearing of this case en banc. I concur in the court's decision not to go en banc. I write to respond to the dissent from that decision.

The question is whether the San Francisco Health Care Security Ordinance ("the Ordinance") is preempted by ERISA. We describe the Ordinance in detail in our opinion. *See Golden Gate Restaurant Ass'n v. City and County of San Francisco*, 546 F.3d 639, 643-47 (9th Cir. 2008). In brief, the Ordinance requires San Francisco employers to pay to the City of San Francisco what amounts to a tax. The tax is either $1.17 or $1.76 per hour per employee, depending on the profit or non-profit status of the employer and the number of employees. No employer is required by the Ordinance either to establish a new ERISA health care plan or to modify an existing ERISA health care plan. An employer may fully satisfy its obligation under the Ordinance by paying the tax to the City.

The Ordinance requires that San Francisco use the employers' payments to help support a City-administered program that provides health care to low- and moderate-income residents of San Francisco. The program is called the Health Access Program ("the HAP"). The employers' payments com-

prise only part of the support for the HAP. Some of those receiving health care under the HAP are employees of covered employers, but most are not. The Ordinance gives a covered employer a dollar-for-dollar credit for any amount paid by that employer for health care for its employees. That credited amount may be — but need not be — paid to an ERISA health care plan. The only requirement in order to receive the credit is that the payment be for some form of health care. The benefits obtained by an employer's health care payments (as distinct from the amount paid for those benefits) are irrelevant to the calculation of the credit given to the employer.

The dissent makes several contentions. I disagree with all of them.

First, the dissent contends that our decision creates a circuit conflict with *Retail Industry Leaders Ass'n v. Fielder*, 475 F.3d 180 (4th Cir. 2007). At issue in *Fielder* was ERISA preemption of a Maryland law that required "employers with 10,000 or more Maryland employees to spend at least 8% of their total payrolls on employees' health insurance costs or pay the amount their spending falls short to the State of Maryland." *Id.* at 183. The only employer covered by the Maryland law was Wal-Mart. The Maryland law gave nothing in return — either to the Wal-Mart or its employees — for Wal-Mart's payment to the State.

Despite what appeared on the face of the Maryland law to be a choice between increasing ERISA health care coverage and paying money to the State, the Fourth Circuit held that the law impermissibly "related to" an ERISA plan. In the view of the court, there was no real choice. Instead, the inevitable effect of the law was to require Wal-Mart to increase its ERISA coverage of its employees. The court wrote:

> This would be the decision of any reasonable employer. Healthcare benefits are a part of the total package of employee compensation an employer

gives in consideration for an employee's services. An employer would gain from increasing the compensation it offers employees through improved retention and performance of present employees and the ability to attract more and better new employees. In contrast, an employer would gain nothing in consideration of paying a greater sum of money to the State. Indeed, it might suffer from lower employee morale and increased public condemnation.

> *In effect, the only rational choice employers have under the* [Maryland law] *is to structure their ERISA healthcare benefit plans so as to meet the minimum spending threshold.*

*Id.* at 193 (emphasis added).

The Maryland law contrasts sharply with the San Francisco Ordinance. Under the Ordinance, an employer gains an advantage from its payments to the City, because employees of covered employers are entitled to obtain health care benefits from the HAP at reduced rates. Far from imposing a de facto obligation on an employer to establish or alter an ERISA plan, the Ordinance offers an employer a meaningful choice. As of May 1, 2008, more than seven hundred San Francisco employers had elected to pay money to the City rather than to alter their other health care expenditures. *Golden Gate*, 546 F.3d at 660 n.5.

The dissent nonetheless contends that our decision conflicts with *Fielder*. It contends, "Covered employers under San Francisco's Ordinance must coordinate their non-ERISA payments with their ERISA plans in the very manner the *Fielder* court deemed impermissible." Dissent at 2828. In support, the dissent quotes the first and last sentences from a passage from *Fielder* but omits the intervening three sentences. The full passage is as follows:

> If Wal-Mart were to attempt to utilize non-ERISA health spending options to satisfy the [Maryland law], it would need to coordinate those spending efforts with its existing ERISA plans. For example, an individual would be eligible to establish a Health Savings Account only if he is enrolled in a high deductible health plan. In order for Wal-Mart to make widespread contributions to Health Savings Accounts, *it would have to alter its package of ERISA health insurance plans* to encourage its employees to enroll in one of its high deductible health plans. From the employer's perspective, the categories of ERISA and non-ERISA healthcare spending would not be isolated, unrelated costs. Decisions regarding one would affect the other and thereby violate ERISA's preemption provision.

*Fielder*, 475 F.3d at 196-97 (emphasis added) (citation omitted).

The omitted sentences make clear the difference between the Maryland law and the San Francisco Ordinance. If Wal-Mart chose to use non-ERISA spending options under the Maryland law, "it would have to alter its package of ERISA health insurance plans." *Id.* That is, Wal-Mart's use of the non-ERISA spending option would necessarily produce a change in its ERISA plans. This is not true under the San Francisco Ordinance. An employer's payment of the de facto tax to the City does not produce any change in any ERISA plan.

Second, the dissent contends that our decision conflicts with two Supreme Court decisions, *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001), and *District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125 (1992).

In *Egelhoff*, the challenged state statute required ERISA plan administrators to follow state law in designating plan

beneficiaries. The Court held the statute preempted because it "binds ERISA plan administrators to a particular choice of rules for determining beneficiary status." *Egelhoff*, 532 U.S. at 147. The Court wrote, "Plan administrators must either follow [the State's] beneficiary designation scheme or alter the terms of their plan so as to indicate that they will not follow it." *Id.* at 150. Because the statute in *Egelhoff* required a change in an ERISA plan under either choice, it was preempted. By contrast, the San Francisco Ordinance does not require any change to any ERISA plan.

In *Greater Washington*, a Washington, D.C. ordinance required employers to provide workers' compensation benefits to their employees. The level of required benefits was "measured by reference to the existing health insurance coverage provided by the employer." *Greater Washington*, 506 U.S. at 130. The Court held that the requirement that benefits be determined by reference to benefits provided in ERISA plans was an impermissible reference to an ERISA plan. By contrast, the San Francisco Ordinance requires employers to provide money to the City (rather than benefits to the employee), and determines the level of required payment by reference to hours worked by an employee (rather than by reference to benefits provided under an ERISA plan). An employer's required payment to the City may be reduced or eliminated if the employer makes payments to an employee's ERISA plan or to another healthcare-providing entity; but the amount of the reduction is determined by reference to the amount of money paid.

Finally, the dissent contends that ERISA responds to the "need for nationally uniform plan administration" and a "uniform regulatory system." Dissent at 2832. The purpose of ERISA is not to require national uniformity in the provision of health care. Rather, its purpose is to "ensure[ ] that the administrative practices of a benefit plan will be governed by only a single set of regulations." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987). Nothing in the Ordinance

requires the employer to establish an ERISA plan or to alter an existing ERISA plan, and nothing in the Ordinance interferes in any way with the uniformity of ERISA regulations.

---

M. SMITH, Circuit Judge, with whom KOZINSKI, Chief Judge, and O'SCANNLAIN, KLEINFELD, TALLMAN, BYBEE, CALLAHAN, and BEA, Circuit Judges, join dissenting from the denial of rehearing en banc:

I respectfully dissent from our court's denial of rehearing this case en banc. Our decision in this case creates a circuit split with the Fourth Circuit Court of Appeals, renders meaningless the tests the Supreme Court set out in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), conflicts with other Supreme Court cases establishing ERISA[1] preemption guidelines, and, most importantly, flouts the mandate of national uniformity in the area of employer-provided healthcare that underlies the enactment of ERISA. Our decision allows San Francisco to create an ordinance that effectively requires "ERISA administrators to master the relevant laws of 50 States"— which in turn "undermine[s] the congressional goal of 'minimiz[ing] the administrative and financial burden[s]' on plan administrators — burdens ultimately born by the beneficiaries." *Egelhoff v. Egelhoff*, 532 U.S. 141, 149-50 (2001).

The panel opinion creates " 'a road map for state and local governments' "[2] seeking to regulate employee health plans despite ERISA's preemptive mandate. In my view, if our decision in this case remains good law, similar laws will become commonplace, and the congressional goal of national uniformity in the area of employer-provided healthcare will

---

[1]Employee Retirement Income Security Act of 1974 (ERISA).

[2]Jason Dearen, Federal Court Upholds San Francisco Healthcare Program, L.A. Times, Sept. 30, 2008 (quoting City Attorney Dennis Herrera).

be thoroughly undermined, with significant adverse consequences to employers and employees alike.

## I

The San Francisco Health Care Security Ordinance (Ordinance, or San Francisco Ordinance) requires that covered employers[3] within San Francisco make minimum "expenditures" to their own programs for their employees' health care *or* instead make contributions in the required amounts to the city. These alternative contributions go to finance either San Francisco's Health Access Program (HAP) or health "reimbursement accounts." The HAP serves uninsured San Francisco residents, while the "reimbursement accounts" are assigned to employees of the covered employers. For large businesses, the required employer's rate in 2008 for health care expenditures is $1.76 for each hour worked by a covered employee. The Ordinance also imposes extensive record keeping and reporting requirements on San Francisco employers, and creates penalties for employers who fail to comply with these requirements.[4]

Golden Gate Restaurant Association (GGRA) filed suit on November 8, 2006 against the City of San Francisco, in the Northern District of California, asking the district court to find that ERISA preempts the employer spending requirements of the Ordinance, and seeking a permanent injunction against enforcement of those provisions. The parties filed cross-motions for summary judgment.

---

[3]A covered employer is a for-profit employer engaged in business in San Francisco for whom at least twenty persons work, or a nonprofit employer in San Francisco for whom at least fifty persons work. San Francisco Health Care Security Ordinance (HSAO), §§ 14.1(b)(3), 14.1(b)(4) and 14.1(b)(15).

[4]The Ordinance requires covered employers to keep "accurate records of health care expenditures, required health care expenditures, and proof of such expenditures made each quarter each year." HSAO § 14.1(b)(i).

On December 27, 2007, Judge Jeffrey S. White entered judgment for GGRA, finding that ERISA Section 514(a) preempts the Ordinance. *Golden Gate Rest. Ass'n v. City & County of San Fran.,* 535 F. Supp. 2d 968 (N.D. Cal. 2007). Section 514(a) states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." To determine whether the Ordinance "related to" an employee benefit plan, Judge White applied the two tests articulated by the Supreme Court in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983). These tests examine (1) whether a law has a "connection with" employers' ERISA-regulated plans, or (2) whether such law makes "reference to" such employer-sponsored plans. If either test is met, the ordinance is preempted under Section 514(a). Judge White found the San Francisco Ordinance preempted under both tests. 535 F. Supp. 2d at 975.

Applying the first test, Judge White found that the Ordinance has an impermissible connection with affected employer ERISA plans in four ways: (1) "the Ordinance affects plan administration, a core area of ERISA concern"; (2) the enforcement provisions impermissibly "impose on employers specific record keeping, inspection and other administrative burdens" which are "ongoing and directly affect" the scheme of health care benefits; (3) "the Ordinance directly and indirectly affects the structure and administration of ERISA plans"; and (4) the Ordinance "has a prohibited connection with ERISA plans because it interferes with nationally uniform plan administration." *Id.* at 975-77. Although the district court acknowledged that required payments under the Ordinance could be made directly to a public entitlement program, effectively bypassing employer ERISA plans, "[t]he undeniable fact is that the vast majority of any employer's healthcare spending occurs through ERISA plans. Thus, the primary subjects of the [expenditure requirements] are ERISA plans, and any attempt to comply with the statute would have direct effects on the employer's ERISA plans."

*Id.* at 976 (quoting *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 196 (4th Cir, 2007)).

Applying the second *Shaw* test, Judge White found that the Ordinance impermissibly makes reference to employers' ERISA plans by defining "health care expenditure" in such a way that compliance can only be determined with reference to the employer's ERISA-regulated health plan.[5] I believe Judge White's well reasoned opinion should have been upheld by our court.

## II

Our merits panel disagreed with Judge White, and determined that the Ordinance does not "relate to" ERISA plans. The panel reasoned that because the Ordinance does not require an employer to adopt an ERISA plan or to provide benefits though an ERISA plan (as a covered employer can discharge its expenditure obligations by making payments to the city), the Ordinance sidesteps Section 514(a) preemption. The panel also indicated that the Ordinance was not preempted because it regulated employer payments instead of employee benefits.

## A

In so holding, the panel's decision conflicts with a recent case from the Fourth Circuit Court of Appeals. In 2007, the Fourth Circuit struck down a similar state statute in *Fielder*, 475 F.3d at 183.[6] In that case, the ordinance at issue required covered employers to spend at least 8% of their payroll costs on health insurance, or else to pay a like sum of money to the

---

[5]Judge White did not, as the plaintiff and many of the amici urged, find that payments to the city under the Ordinance created an ERISA plan.

[6]In addition, in *Retail Indus. Leaders Ass'n v. Suffolk County*, 497 F. Supp. 2d 403 (E.D.N.Y. 2007), the Eastern District of New York held that ERISA preempts a similar Suffolk County ordinance.

state of Maryland. *Fielder* held that ERISA Section 514(a) preempted the Maryland statute because the statute forced employers either to make minimum health care contributions to ERISA plans for its employees or to make contributions to Maryland's Health Care Fund. The Fourth Circuit recognized that "categories of ERISA and non-ERISA healthcare spending [are not] isolated, unrelated costs." *Id.* at 197. Further, the court reasoned that "fair share laws," such as the Maryland law, were impermissibly connected with ERISA plans because they "would disrupt employers' uniform administration of employee benefit plans on a nationwide basis." *Id.* at 194.

In *Golden Gate*, the panel distinguishes *Fielder* by noting that the Maryland law created no "meaningful alternative" for the employer other than increasing their current health plans. The alternative, which the panel dismissed, was simply a tax on the employers, which was not earmarked towards their employees' insurance, but rather towards general entitlement funds. Our panel implies that in the San Francisco Ordinance, the municipally funded health alternative is somehow more "meaningful." This meaning ostensibly comes from the fact that employers are still contributing to their specific employees health care, albeit through the administration of the city.

Such a distinction conflicts with the reasoning of *Fielder*. The *Fielder* court explained that even were there a more "meaningful avenue" by which the employer could make non-ERISA healthcare payments, the Maryland statute was still impermissibly connected to ERISA plans. 475 F.3d at 196-97 ("If [the employer] were to attempt to utilize non-ERISA health spending options to [comply with the statute], it would need to coordinate those spending efforts with its existing ERISA plans. . . . Decisions regarding one would affect the other and thereby violate ERISA's preemption provision."). Covered employers under San Francisco's Ordinance must coordinate their non-ERISA payments with their ERISA plans in the very manner the *Fielder* court deemed impermissible.

When determining how much, if any, payment they have to make to the city to be in compliance, they necessarily need to evaluate and coordinate with their existing ERISA plans. A currently non-complying employer in San Francisco has the same choice as a non-complying employer in Maryland: Make a payment to the government or change its current ERISA plan. Where the employer's payment goes after the employer makes its choice does not change the fundamental nature of the payment from a penalty to a "meaningful avenue."

The holdings of *Fielder* and *Golden Gate* stand in clear opposition, and create a circuit split on the issue of whether ERISA preempts "fair share" or "play-or-pay" ordinances.

**B**

Further, the *Golden Gate* panel opinion disregards important case law setting forth ERISA preemption principles. ERISA preemption's "goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656-57 (1995) (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)). The burden of conflicting obligations on employers operating in multiple jurisdictions "is exactly the burden that ERISA seeks to eliminate." *Egelhoff*, 532 U.S. at 151. "Requiring ERISA administrators to master the relevant laws of 50 States . . . would undermine the congressional goal of 'minimiz[ing] the administrative and financial burden[s]' on plan administrators — burdens ultimately born by the beneficiaries." *Id.* at 149-50 (quoting *Ingersoll-Rand Co.*, 498 U.S. at 142). The opinion in *Golden Gate* conflicts with these ERISA preemption principles.

In *Egelhoff*, the Court dismissed the argument that states can avoid preemption by offering employers a theoretical means to avoid changing their current ERISA plans. 532 U.S. at 147-48. Although employers were able to "opt out" of the state law requirement, the law had "a connection with" the ERISA plan and was thus preempted. *Id.* at 150. The court held that "[t]he statute is not any less of a regulation of the terms of ERISA plans simply because there are two ways of complying with it." *Id.* The San Francisco Ordinance at issue here is similarly connected, as it structures employers' choices with respect to their existing ERISA plans. Non-complying San Francisco employers have a choice: either increase or maintain their health care expenditures under their own plans, or, pay enough to the city to satisfy that mandated minimum. Per *Egelhoff*, a law like the San Francisco ordinance is ERISA-preempted because it frames employers' choices in this fashion.

Further, allowing San Francisco to pose such a choice would strike at the heart of ERISA because the plan administrators would have to account for potential opt-out provisions in all 50 states. *Id.* at 151. *Egelhoff* explained this burden:

> It is not enough for plan administrators to opt out of this particular statute. Instead, they must maintain a familiarity with the laws of all 50 States so that they can update their plans as necessary to satisfy the opt-out requirements of other, similar statutes. They also must be attentive to changes in the interpretations of those statutes by state courts. This "tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction" is exactly the burden ERISA seeks to eliminate.

*Id.* (quoting *Indersoll-Rand*, 498 U.S. at 142). The Ordinance here places employers in a similar situation. As the Secretary of Labor observes, while the "administrative burden imposed by a single law may be tolerable, the cumulative burden could

be staggering and runs directly counter to ERISA's goal of encouraging employers, who may operate nationally, voluntarily to provide uniform employee benefits under the legal framework provided by a federal scheme with intentionally broad preemptive force." Secretary's Amicus Brief, at 15.

In addition, the *Golden Gate* opinion conflicts with *District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125 (1992). In that case, a D.C. ordinance required employers to provide the same medical coverage to injured employees as to non-injured, active employees. The Supreme Court struck down the ordinance, explaining that the statute impermissibly referred to an ERISA plan. *Id.* at 130. This was so even though D.C. employers did not need to amend their ERISA plans to comply with the ordinance; they could provide benefits for injured employees through a separate or non-ERISA plan. The Court found that the statute was preempted, however, because the benefits had to be equal, thereby requiring a comparison to the ERISA plan. Similarly, in *Golden Gate*, although covered employers may not need to amend their ERISA plans under the Ordinance, they can only determine their compliance by using their current ERISA plans as a reference.

The *Golden Gate* opinion attempted to distinguish this case by claiming that a "critical distinction" existed because "[u]nder the ordinance in *Greater Washington*, obligations were measured by reference to the level of *benefits* provided by the ERISA plan to the employee. Under the Ordinance in our case . . . [obligations] are measured by reference to the *payments* provided by the employer to an ERISA plan or to another entity." 546 F.3d at 658. Thus, the panel implies that the D.C. statute would have survived had the statute required covered employers to spend the same amount for injured and non-injured employees instead of requiring the benefits be equal. This distinction has no basis in the text of *Greater Washington* and greatly revises ERISA preemption case law.

## C

Finally, and most importantly, I dissent because this case concerns an issue of exceptional national importance, *i.e.*, national uniformity in the area of employer-provided healthcare. The Fourth Circuit in *Fielder* and the district court here both considered the need for nationally uniform plan administration to be the central concern of the Supreme Court's ERISA preemption case law. The diverse interests of the amicus groups who wrote in support of both positions indicates the level of far-reaching national importance the *Golden Gate* decision has for many groups across the United States.[7]

At the time of ERISA's enactment, a coalition reflecting employer and labor interests sought the establishment of a uniform regulatory system for retirement and welfare benefit plans.[8] As amici the ERISA Industry Committee and the National Business Group on Health note in their brief, the legislators who helped push ERISA through Congress were focused on a broad preemption provision. Senator Javits remarked that "the emergence of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans required . . . the displacement of State action in the field of private employee benefits pro-

---

[7]The plaintiff-appellants had eight amicus briefs submitted in support of their position, by the United States Department of Labor, National Federation of Independent Business Legal Foundation, Retail Industry Leaders Association/ United States Chamber of Commerce, Human Resource Policy Association, Employers Group/ California Chamber of Commerce, International Franchise Association/ Society for Human Resource Management/ National Association of Manufacturers, ERISA Industry Committee/ National Business group on Health, and the American Benefits Council. The defendants-appellees had two amicus briefs submitted in support of their position, by the American Association of Retired People and the Attorney General of the State of California.

[8]Wooten, James A., "A Legislative and Political History of ERISA Preemption, Part 2." JOURNAL OF PENSION BENEFITS, Vol. 14, No. 3, p. 10, Spring 2007; Buffalo Legal Studies Research Paper No. 2007-018. Available at SSRN: http://ssrn.com/abstract=1023699.

grams." 129 Cong. Rec. 29942 (Aug. 22, 1974). Representative Dent remarked, "[w]ith the preemption of the field, we round out the protection afforded to participants by eliminating the threat of conflicting and inconsistent State and local regulation." *Id.* Finally, Senator Williams added:

> [T]he substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in the broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law.

*Id.* The *Golden Gate* panel opinion ignores ERISA's preemption goals and instead focuses on ERISA's objective of protecting against misuse of benefit plan funds. While misuse was undoubtedly a concern, it is clear from the cited language that preemption was central to ERISA's implementation.

The problems that the Ordinance poses to multi-jurisdictional employers are significant. Without uniformity, multi-state employers cannot offer all of their similarly situated employees the same benefits, and creates no possibility of continuity in benefit programs. Our panel's decision essentially guarantees, for example, that employees of a national chain restaurant in Oakland will receive different benefits than similarly situated employees of the same restaurant just a few miles away in San Francisco. Uniformity is essential to ensuring that employees understand what benefits they are entitled to and how to obtain them. Covered employers in San Francisco must continuously monitor the City's spending targets, make quarterly calculations for health care expenditures, keep abreast of varying definitions for different employees, track eligibility waiting periods for each individual employee, and maintain the records keeping requirements of the Ordi-

nance. While this may not be difficult on a small scale, if we consider the possibility of numerous cities, counties and states enacting similar laws, the burden this places on employers is potentially very great, thereby encouraging affected employers to drop their ERISA plans as a cost saving measure. If upheld, *Golden Gate* will undoubtedly serve as a roadmap in jurisdictions across the country on how to design and enact a labyrinth of laws requiring employer compliance on health care expenditures, thereby creating the very kind of health care expenditure balkanization ERISA was intended to avoid.

## III

I dissent because I believe the San Francisco Ordinance is clearly preempted by ERISA Section 514(a). Contrary to the arguments made by Judge W. Fletcher in both the Concurrence and the original panel opinion, our decision here creates a circuit split with the Fourth Circuit, undercuts the Supreme Court's ERISA preemption case law, and creates a roadmap for the enactment of numerous conflicting health care laws affecting national employers, the very situation Congress strove to avoid when it enacted ERISA.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.