Roy INSCO and Donna
Insco, Plaintiffs,

v.

AETNA HEALTH & LIFE INSUR-
ANCE CO., Aetna Health Insurance
Co., Aetna Life Insurance Co., Does I
through X, and Roe Corporations, De-
fendants.

No. 2:09–cv–01254–RCJ–RJJ.

United States District Court,
D. Nevada.

Nov. 5, 2009.

Antonia C. Killebrew, Gerald I. Gillock, Gillock Markley & Killebrew, PC, Las Vegas, NV, Britt L. Tinglum, Richard H. Friedman, Friedman Rubin, Bremerton, WA, Matthew L. Sharp, Matthew L. Sharp, Ltd., Reno, NV, William S. Cummings, Friedman Rubin, Anchorage, AK, for Plaintiffs.

Christopher G. Rigler, John H. Cotton, John H. Cotton & Associates, Ltd., Las Vegas, NV, Richard J. Doren, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, for Defendants.

## ORDER

ROBERT C. JONES, District Judge.

This case arises out of Plaintiff Roy Insco's ("Insco") alleged contraction of hepatitis C during treatment at the Endoscopy Center of Southern Nevada and the Gastroenterology Center of Nevada ("the Clinics") on June 13, 2007. Plaintiffs Roy and Donna Insco filed the present lawsuit, and the First Amended Complaint ("FAC") in the Clark County District Court against Aetna Health and Life Insurance Co. ("AHLI"), Aetna Health Insurance Co. ("AHI"), Aetna Life Insurance Co. ("ALI"), Does I–X, and Roes 1–X (collectively, "Aetna" or "Defendants"). (# 1 at 17). Defendants removed to this Court based on both federal question and diversity jurisdiction. (# 1). Before the Court is Defendants' Motion to Dismiss (# 14). Plaintiffs have filed a Response. (# 20). For the reasons given herein, the Court denies the Motion to Dismiss (# 14) as to the First and Second Causes of Action and grants the Motion to Dismiss (# 14) as to the Third Cause of Action.

## I. FACTS AND PROCEDURAL HISTORY

The present case is similar in fact and law to a case recently decided by Chief Judge Roger L. Hunt of this District. *See Sadler v. Health Plan of Nev., Inc.*, No. 2:08–cv–00466–RLH–LRL (D. Nev. June 25, 2008) (remanding to state court). That case is not published. However, Plaintiff has attached the order from that case to his Response (# 20, Ex. 1), and much of the research and reasoning therein is helpful in the present case. Both cases ultimately arose out of the Southern Nevada Health District's discovery of unsafe injection practices at the Endoscopy Center of Southern Nevada, which exposed tens of thousands of Nevada residents to bloodborne diseases like hepatitis B, hepatitis C, and HIV.

Plaintiff Roy Insco was allegedly exposed to such risk when he was treated at the Clinics on June 13, 2007 and contracted hepatitis C as a result of Defendants' negligence. Insco was employed at Ross Stores, Inc. ("Ross"), which paid for Insco's insurance plan ("the Plan") with Aetna. Aetna was the claims administrator for the Plan. As administrator, Aetna processed claims and negotiated contracts with independent providers for use by Plan members. (# 14 at 10:11–22). The Clinics were a part of Aetna's Preferred Provider Network. (*Id.* at 2–4).

Plaintiff claims that Defendant insurers had a duty to "evaluate, audit, monitor, and supervise" the Clinics at which he received treatment (# 1 ¶¶ 55–56), and that the floor of this duty was established by the Nevada Revised Statutes ("NRS") and the Nevada Administrative Code ("NAC") under the doctrine of negligence per se, because Plaintiff was within the

class of persons intended to be protected and his injuries were of the type intended to be prevented. (*Id.* ¶¶ 62–63 (citing Nev. Rev.Stat. §§ 695G.130, 695G.160, 695G.180, 695G.190 and Nev. Admin. Code §§ 695.[C]200, 695C.210, and 695C.400)).[1] Pursuant to this obligation, Plaintiff alleges that had Defendants properly established, implemented, and supervised the mandated quality assurance procedures, the unsafe injection practices would have been corrected and Plaintiff would not have been harmed. (*Id.* ¶ 57). Accordingly, Plaintiff's First and Second Causes of Action, which are really a single cause of action, are for Negligence and Negligence Per Se.

Plaintiff's Third Cause of Action is for a Breach of the Implied Covenant of Good Faith and Fair Dealing. (*Id.* at 25). Plaintiff claims that Defendants breached this covenant as to their insurance contract with Plaintiff by "engaging in unreasonable conduct with knowledge of there being no reasonable basis for its conduct." (*Id.* ¶ 70). This claim seems to conflate a cause of action for breach of the implied covenant of good faith and fair dealing with negligence. First, Plaintiff uses the term "unreasonable" as opposed to "intentional." (*Id.*). Second, the next paragraph of the FAC makes it clear that this is a "negligence" theory. (*Id.* ¶ 71). But Plaintiff then goes on to claim "fraud, malice, and oppression" to support punitive damages. (*Id.* ¶ 72).

Defendants removed the action to federal court based both on diversity jurisdiction, 28 U.S.C. § 1332, and federal question jurisdiction, § 1331, arguing that Plaintiff's claims are preempted by § 514(a) and § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendants have filed the present Motion to Dismiss (# 14), arguing that Plaintiffs have failed to state a claim under Rule 12(b)(6) because: (1) Plaintiff's claims are preempted by ERISA §§ 514(a) and 502(a), and (2) Plaintiffs have not made out prima facie cases of the underlying torts.

## II. RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See North Star Int'l. v. Arizona Corp. Comm'n.,* 720 F.2d 578, 581 (9th Cir.1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988

---

**1.** Plaintiff cites NAC § 695.200, probably meaning § 695C.200. Also, there appears to exist no such provision as NAC § 695C.210.

(9th Cir.2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations omitted).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion ... However, material which is properly submitted as part of the complaint may be considered" on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19 (9th Cir.1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir.1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 925 (9th Cir.2001).

## III. ANALYSIS

### A. Preemption Under ERISA

■ Congress enacted ERISA to "protect ... the interests of participants in employee benefit plans and their beneficiaries," by setting out substantive regulatory requirements for employee benefit plans, and to "provide for appropriate remedies, sanctions, and ready access to the federal courts." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (citing 29 U.S.C. § 1001(b)); *see*

*also Brandner v. Unum Life Ins. Co. of Am.,* 152 F.Supp.2d 1219, 1223 (D.Nev. 2001). To this end, ERISA contains expansive preemption provisions that are intended to ensure that employee benefit plan regulation is "exclusively a federal concern." *Id.* (citing *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981)). In determining whether federal law preempts state law, the "Supreme Court has repeatedly held that the question of whether federal law preempts state law is one of congressional intent, and that Congress' purpose is the ultimate touchstone." *Brandner,* 152 F.Supp.2d at 1223 (citations and internal quotations omitted).

■ "There are two strands to ERISA's powerful preemptive force." *Cleghorn v. Blue Shield of Cal.,* 408 F.3d 1222, 1225 (9th Cir.2005). "First, ERISA section 514(a) expressly preempts all state laws 'insofar as they may now or hereafter relate to any employee benefit plan.'" *Id.* (citing 29 U.S.C. § 1144(a)). Second, "ERISA section 502(a) contains a comprehensive scheme of civil remedies to enforce ERISA's provisions." *Id.* (citing 29 U.S.C. § 1132(a)). Under this section, "[a]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Davila,* 542 U.S. at 209, 124 S.Ct. 2488. Because preemption can occur under either section, the Court must examine both sections. *See Cleghorn,* 408 F.3d at 1225 ("A state cause of action that would fall within the scope of [§ 502(a)'s] scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a)." (quoting *Davila,* 542 U.S. at 214 n. 4, 124 S.Ct. 2488)).

### 1. Preemption Under ERISA § 514(a)

■ ERISA § 514(a) preempts all state law claims that "relate to" any employee benefit plan. 29 U.S.C. § 1144(a). A law "relates to" a covered employee benefit plan: "if it (1) has reference to, or (2) has a connection with such a plan." *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). Here, Plaintiffs argue that because the FAC asserts claims addressing the regulation of the quality of medical care provided by Defendants' medical providers—an area of the law traditionally left to the States—as opposed to rights under the applicable plans, their claims do not relate to their benefit plans and are therefore not preempted. *See, e.g., United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. v. Grove*, 105 F.Supp.2d 1129, 1130 (D.Nev.2000) (finding a statute that operated in an area of traditional state regulation was not preempted under ERISA).

Plaintiff's lawsuit is premised in relevant part on Chapter 695G of the NRS and Chapter 695 of the NAC (collectively, "the Code").[2] Under the Code, certain organizations, such as Defendants, are required to "establish a quality assurance program which consists of a method for analyzing the outcomes of health care, peer review, the collection of health care data and appropriate recommendations for remedial actions." Nev. Admin. Code § 695C.400(1). "The program must be designed to direct, evaluate and monitor the effectiveness of the health care provided by the organization," and must be reviewed at least annually to ensure the quality assurance standards are being fol-

lowed and are effective. Nev. Admin. Code § 695C.400(2), (7). These regulations were enacted by Nevada's State Board of Health pursuant to its authority under NRS § 439.200 to adopt, amend, and enforce regulations consistent with the law on a variety of health issues, including to "protect and promote the public health generally." Nev.Rev.Stat. § 439.200(f).

■ "The Supreme Court has instructed that there is a presumption against holding that ERISA preempts state or local laws regulating matters that fall within the traditional police powers of the state." *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1120 (9th Cir.2008), *reh'g en banc denied*, 558 F.3d 1000 (9th Cir.2009). Traditionally, such powers include the regulation of health and safety matters. *De Buono v. NYSA–ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997) (citation omitted). "[N]othing in the language of [ERISA] or the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

Here, the administrative code provisions on which Plaintiff's relevant claim is premised relate to general health care, an area historically left to the states. Therefore, Defendants "bear the considerable burden of overcoming 'the starting presumption that Congress did not intend to supplant state law.'" *De Buono*, 520 U.S. at 814, 117 S.Ct. 1747 (quoting *Travelers Ins. Co.*, 514 U.S. at 654, 115 S.Ct. 1671).

**2.** Plaintiffs do not bring a private right of action under this regulation, but merely use it to establish duty and breach in their negligence per se claim. Notwithstanding this, the Code must be the focal point of the Court's

analysis due to Defendants' contention that the regulation imposes an administrative burden on them that brings the claim under the preemptive force of ERISA.

### a. "Reference to"

 A state law can "relate to" a covered employee benefit plan if it has "reference to" such a plan, meaning that it either "acts immediately and exclusively upon ERISA plans," or "the existence of ERISA plans is essential to the law's operation." *Dillingham*, 519 U.S. at 325, 117 S.Ct. 832. Here, the relevant Code provisions satisfy neither of these definitions because they apply to both ERISA and non-ERISA plans. Specifically, the regulations require any organization, defined as either a health maintenance organization ("HMO") or provider-sponsored organization ("PSO"), to abide by the quality assurance program designed by the Nevada Board of Health. Nev. Admin. Code § 695C.060 (defining "organization"). There is no provision in the NAC limiting the application of the quality assurance requirements to providers of employer benefit plans, and certainly HMO's or PSO's could contract with private individuals or groups not subject to ERISA. The NAC does not refer anywhere to ERISA. Because the law's force remains in effect regardless of ERISA, it cannot be said that the Code "acts immediately and exclusively upon ERISA plans," or that "the existence of ERISA plans is essential to the law's operation." *Dillingham*, 519 U.S. at 325, 117 S.Ct. 832. Rather, the Code sets forth quality assurance standards with which all HMO's and PSO's must comply regardless of whether the plan provided is employer related.

In *Gregoire*, the Ninth Circuit held that a Washington state statute requiring health plan carriers in the state to cover various alternative medical treatments under their policies was not preempted by ERISA because the law did not "refer to" an employee benefit plan. *Wash. Phys. Serv. Ass'n v. Gregoire*, 147 F.3d 1039, 1042, 1044 (9th Cir.1998). In so finding, the court explained that "if an HMO wants to sell health insurance in [the state], it must comply with the [statute] regardless of to whom it sells insurance." *Id.* at 1043. Though the statute in *Gregoire* explicitly exempted ERISA plans from its enforcement, the premise is the same. If an HMO or PSO wishes to do business in Nevada, it must comply with the quality assurance standards set forth in the Code. For these reasons, the state regulations here do not "refer to" employee health plans within the meaning of § 514(a).

### b. "Connection with"

 A law also "relates to" an ERISA-covered plan if it has a "connection with" the plan. *Dillingham*, 519 U.S. at 325, 117 S.Ct. 832. To determine this, courts should consider the following factors: "(1) whether the state law regulates the types of benefits of ERISA employee welfare benefits plans; (2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law; (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee." *Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co.*, 135 F.3d 671, 678 (9th Cir.1998). In evaluating these factors, courts are also to consider the purpose of ERISA, *Dillingham*, 519 U.S. at 325, 117 S.Ct. 832, which is to "provide a uniform regulatory regime over employee benefit plans," *Davila*, 542 U.S. at 208, 124 S.Ct. 2488.

 Although it is a complex question, the Court finds that Plaintiff's claims do not have a connection with ERISA-covered benefit plans. The Code does regulate the

type of benefits covered by ERISA plans. Defendants' argument that the regulations impose an administrative burden on Defendants has been adopted by the Ninth Circuit. Defendants point to *Bui* for the proposition that selection and retention of service providers in connection with a medical plan constitutes administrative conduct that requires preemption under ERISA § 514(a). *Bui v. AT & T*, 310 F.3d 1143, 1152 (9th Cir.2002).

> ERISA also preempts the claim for negligent retention of SOS as a service provider. Like the selection of providers, the retention of providers is a necessary part of the administration of an ERISA plan. Thus, for the same reasons ERISA precludes suit against AT & T for its initial decision to select SOS, ERISA shields Lucent's decision to retain SOS from the reach of state standards.

*Id.* Unless the present case is meaningfully distinguishable, Bui requires the Court to dismiss the state law claims as preempted by ERISA § 514(a). *See id.* The present case is meaningfully distinguishable.

In *Bui*, the Court distinguished causes of action involving medical decisions made in the course of treatment, which are not preempted, from those that involve administrative decisions made in the course of administering an ERISA plan, which are preempted. *Id.* at 1149. Under *Bui*, a claim based on negligence in selection or retention of a provider, regardless of the source of the duty, "is a necessary part of the administration of an ERISA plan," not provision of services. *Id.* at 1152. In *Sadler*, the court found that the obligations imposed on Defendants by way of the Code did not fall squarely into either category of treatment decisions or plan administration. The court pointed out that Plaintiffs had brought neither a medical malpractice action, which would fall under the "medical decisions" category and would not be preempted, nor did they seek

to obtain rights or benefits due under their plans, which would involve administrative decisions that would be preempted. There, as here, the complaint alleged that Defendants were negligent in failing to abide by certain quality assurance standards set forth in the Code. The *Sadler* court found that this alleged conduct, contrary to Defendants' assertion, was more akin to the quality of medical services provided as opposed to administration of benefits, and was therefore not preempted.

The distinction is that only Ross's decision to retain Aetna was an "ERISA decision," but Aetna's decision to select providers to be in its Network was not an ERISA decision. This seemed to be Plaintiff's position at oral argument, although Plaintiff's brief does not draw this distinction clearly. To make this argument, Plaintiff must convince the Court that the case turns on the fact that Ross's decision to retain Aetna is the only administrative, ERISA-preempted decision, and that Aetna's decision to retain certain providers in its Network is not preempted, because Aetna's decisions in this regard were not made as part of administration of an ERISA plan, but simply as management of its internal affairs, which affected all of its clients, ERISA or not. A claim based on Aetna's alleged negligence under the statutory and common law duties existing in Nevada is not preempted by ERISA if Aetna's decisions in this regard do not concern administration of an ERISA plan. In other words, under *Bui*, the Court would have to find that any negligence claim against Ross for selection and retention of Aetna is preempted, but that a similar claim against Aetna for selection or retention of negligent providers is not similarly preempted unless it was done specifically in relation to an ERISA plan. If Aetna were purely the administrator of the plan, it could not under *Bui* be sued for negligent selection or retention of a pro-

vider. Both Defendants and Plaintiff refer to Aetna as the "administrator" of the plan throughout, which makes the distinction that Plaintiff attempts more difficult to see. Plaintiff's argument rests on the distinction that although Aetna may in fact be an administrator, it is not purely an administrator for the purposes of ERISA preemption, because even though this is its formal function under the contract, it is not only a delegate of Ross for administering the plan, but also a healthcare organization with its own duties under the Nevada Code. It is Aetna's actions in the latter capacity that are not preempted by ERISA § 514(a).

The Court therefore agrees with Plaintiff that a state law claim based on Aetna's allegedly negligent selection and retention of healthcare providers in its Preferred Provider Network is not preempted by ERISA § 514(a), because these choices are made not in conjunction with Aetna's contractual administration of an ERISA plan, but rather on Aetna's own accord, regardless of the existence of any ERISA plans. Aetna cannot wear its later grant of access to its pre-existing Preferred Provider Network as armor against Nevada's health and welfare regulations simply because it often grants access to the Network pursuant to an ERISA-administration contract with an employer. Aetna's choice of providers in the network is made independently from its contractual duties to administer any ERISA plan. Aetna's choice to grant access to its Network as it exists, or its direct selection of providers for Ross under the contract, are not subject to suit under state law, but Aetna's choice of providers within its own preexisting healthcare Network is.

## 2. Preemption under ERISA § 502(a)

■ Under § 502(a), a civil action may be brought for the following purposes: (1) "to recover benefits due to him under the terms of his plan," (2) "to enforce his rights under the terms of the plan," (3) "to clarify his rights to future benefits under the terms of the plan," or (4) "to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) and (a)(3). "Any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." *Davila*, 542 U.S. at 209, 124 S.Ct. 2488.

■ Many of the arguments asserted for preemption under § 514(a) are also asserted here. In arguing that Plaintiff's claims are preempted under § 502(a), Defendants contend that they relate directly to administrative decisions in connection with their health insurance plans. Both of these cases are distinguishable in that they involve an interpretation of plan benefits, while here, Plaintiff's claims arise independent from any obligation imposed by their plans. This conclusion is best reflected in the fact that Plaintiff's claims do not require an interpretation of plan benefits.

In *Cleghorn*, a participant's claim for reimbursement of emergency medical expenses was denied by his ERISA health plan insurer. 408 F.3d at 1224. He filed a state law claim arguing that the insurer's emergency care policy violated certain provisions of the California Health and Safety Code. *Id.* The Ninth Circuit found that because "[t]he only factual basis for relief pleaded in Cleghorn's complaint [was] the refusal of [the insurer] to reimburse him for the emergency medical care he received[,][a]ny duty or liability that [the insurer] had to reimburse him 'would exist here only because of [the insurer's] admin-

istration of ERISA-regulation benefit plans.'" *Id.* at 1226 (quoting *Davila,* 542 U.S. at 213, 124 S.Ct. 2488). Thus, Cleghorn's state law claims were held preempted by ERISA § 502(a). *Id.* Unlike in *Cleghorn,* Plaintiffs here are not seeking reimbursement of medical treatments under their health benefit plans.

*Davila* is similarly distinguishable. There, an ERISA plan participant and beneficiary sued two HMOs alleging that their failure to provide coverage for certain medical treatments that were recommended by the patients' treating physicians violated an independent legal duty under the Texas Health Care Liability Act ("THCLA") to exercise ordinary care when making health care treatment decisions. *Davila,* 542 U.S. at 205, 124 S.Ct. 2488. The Court found that since the THCLA "create[d] no obligation on the part of the ... [HMO] ... to provide to an insured or enrollee treatment which is not covered by the health care plan," the HMO "could not be subject to liability under THCLA if it denied coverage for any treatment not covered by the health care plan that it was administering." *Id.* at 213, 124 S.Ct. 2488. In other words, because the HMO's potential liability derived entirely from the particular rights and obligations established by the benefit plans, the plaintiffs' state law claims fell within the scope of ERISA § 502(a) and were completely preempted. *Id.*

Unlike in the foregoing cases of *Cleghorn* and *Davila,* Plaintiff here is not suing for plan benefits under the guise of a statutory claim. Rather, Defendants were under an obligation wholly independent of both ERISA and the terms of the Plan to maintain certain quality assurance standards. Plaintiff's claims do not seek to recover benefits under the Plan, nor does he seek to enforce or clarify any rights under the Plan. 29 U.S.C. § 1132(a). Neither is Plaintiff asking the Court to enjoin any action that violates any provisions of the Plan or for relief to redress such violations or enforce any ERISA or Plan provisions. *Id.* Because Plaintiff's claims do not fall under the civil enforcement mechanism of § 502(a), the Court finds that his claims are not preempted under ERISA § 502(a).

Because the claims are not preempted by ERISA, the Court must examine whether Plaintiff has made out prima facie claims of the underlying actions. Removal in *Sadler* was based purely on 28 U.S.C. § 1331. No. 2:08–cv–00466–RLH–LRL, # 28, at 2:20–21 (D. Nev. June 25, 2008). The *Sadler* Court was without power to rule on the defendant's motion to dismiss after granting the plaintiff's motion to remand based on a defect in subject matter jurisdiction (lack of federal preemption). Here, by contrast, Defendants based removal on both federal question jurisdiction under § 1331 and diversity jurisdiction under § 1332. Defendants AHLI and ALI are incorporated in and have their principal places of business in Connecticut. Defendant AHI is incorporated in and has its principal place of business in Pennsylvania. Plaintiffs are Nevada residents. Therefore, even though ERISA does not apply, there remains diversity jurisdiction to rule on the merits in the present case.

## B. Failure to State a Claim

### 1. Negligence

■■■ There are two theories implicated here. The first theory is that Defendants are vicariously liable for the negligence of the Clinics. The Clinics here are indisputably independent contractors. (# 1 ¶ 23; # 14 at 10:18–20). A person does not generally have a duty to supervise an independent contractor. *See Hanneman v. Downer,* 110 Nev. 167, 871 P.2d 279, 284 (1994). There is an exception for "nondelegable" duties. *See Rockwell v. Sun Harbor Budget Suites,* 112 Nev. 1217, 925 P.2d

1175, 1179 (1996) (nondelegable duty to hire responsible security personnel to work on one's premises). Where a contractor is in a better position to appreciate, and take special precautions to prevent, the risk from peculiar dangers, a person will not be vicariously liable for the actions of the contractor. *Sierra Pac. Power Co. v. Rinehart,* 99 Nev. 557, 665 P.2d 270, 274 (1983). Supervision of medical treatment for a contracted provider has not been held to be a nondelegable duty under Nevada law, and the sparse case law on the topic, cited above, indicates that the Nevada Supreme Court would not likely recognize such a theory. Therefore, there is no cognizable vicarious liability claim. Defendants here are only potentially liable for their own negligence.

 This leads to the second, and more plausible, theory Plaintiff argues: that Defendants are directly liable for negligence in selecting these Clinics and failing to supervise them. This is analogous to a negligent hiring claim. Plaintiff has pled causes of action for both negligence and negligence per se. A prima facie claim for negligence in Nevada, as elsewhere, consists of four elements: "(1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Entm't, LLC,* —— Nev. ——, 180 P.3d 1172, 1175 (2008). Although sometimes pled as such, negligence per se is not a separate cause of action but a doctrine whereby a court will consider the negligence elements of duty and breach satisfied as a matter of law, leaving only causation and damages to be determined by the fact-finder, where: (1) a plaintiff can show that a defendant has violated a duty imposed onto him by a criminal or regulatory statute; (2) the plaintiff is a member of the class of persons intended to be protected by the statute or regulation; and (3) the alleged harm resulting is of the kind intended to be prevented by statute. *Ashwood v. Clark*

*County,* 113 Nev. 80, 930 P.2d 740, 743–44 (1997) (citing *Sagebrush Ltd. v. Carson City,* 99 Nev. 204, 660 P.2d 1013, 1015 (1983)); *see also* Restatement (Second) of Torts § 286. The existence of a legal duty is a question of law. *Turner,* 180 P.3d at 1177.

Defendant insurance companies argue that they owed Plaintiff no duty of care in supervising the Clinics. Defendants claim that the Nevada Supreme Court has held that the Nevada Insurance Code, which Plaintiff invokes as a statutory floor of care in his negligence claim, "[was] not intended to create private rights of action or form the basis of negligence claims seeking damages based on statutory violations." (# 14 at 25:19–20 (citing *Allstate Ins. Co. v. Thorpe,* 123 Nev. 565, 170 P.3d 989, 995 n. 22 (2007))). If true as Defendants have stated it, this would dispositively dispose of the First and Second Causes of Action.

In *Thorpe,* the Court considered whether the Nevada "prompt-pay" statute, which requires casualty insurers to approve and pay, or deny, claims for medical benefits within a specific time frame, granted a private right of action to medical service providers for the prompt payment of claims. *Thorpe,* 170 P.3d at 991. The Court held that it did not, but rather only created an exclusive administrative procedure for resolving claims for violations of Nev.Rev.Stat. § 690B.012. Defendants point to footnote 22, wherein the Court explicitly overruled *Rosequist v. Int'l Ass'n of Firefighters,* 118 Nev. 444, 49 P.3d 651, 653 (2002) to the extent that it had held a common law action such as negligence would lie after exhaustion of an exclusive administrative remedy that could be appealed judicially via the Nevada Administrative Procedure Act ("NAPA"). Therefore, if the portion of the code to which Plaintiffs cite creates an exhaustive admin-

istrative remedy subject to review under NAPA, then no common law cause of action for negligence will lie under Nevada law based on the duties created under the Code.

Defendants point out that the Code gives the Nevada Insurance Commissioner ("the Commissioner") the "exclusive" authority to investigate violations, Nev.Rev. Stat. § 679B.680, hold hearings, § 679B.310(1), and issue penalties or seek injunctive relief, § 679B.120(3). Persons may seek judicial review of the Commissioner's decisions. *Id.* § 679B.370. Plaintiff argues that the Commissioner does not have exclusive jurisdiction "over negligence cases." (# 20 at 22:1). Plaintiff notes, "The [Code] gives the [Commissioner] jurisdiction to regulate insurance companies. It does not give it exclusive jurisdiction to resolve private disputes between an insurer and its insured." (*Id.* at 22:6–8). Unlike in *Thorpe,* where the Code created the only remedy and actually provided a private remedy, here the underlying claim is a tort claim for which the Nevada courts indisputably have original jurisdiction, and the Code does not provide any administrative remedy for a private party to recoup damages for its violation, but simply allows the Commissioner to regulate insurance companies. (*Id.* at 22–25). Plaintiff argues that *Thorpe* is therefore inapposite here, and that a more relevant case is *Nev. Power Co. v. Eighth Judicial Dist. Court,* 120 Nev. 948, 102 P.3d 578 (2004). In *Nev. Power Co.,* the Court held that private tort claims were not precluded by administrative schemes where the relevant administrative agency had no power to grant the kind of relief sought, such that a Plaintiff would be left with no remedy at all if the administrative scheme prevented a private tort action. 102 P.3d at 587; *see Ambassador Ins. Corp. v. Feldman,* 95 Nev. 538, 598 P.2d 630, 630–31 (1979) (holding administrative exhaustion inapplicable where the agency

had no power to provide the relief prayed for).

Although nothing in the Insurance Code, Nev.Rev.Stat. tit. 57, creates a private cause of action against an insurer outside of the administrative remedies therein provided, neither does it indicate that the cause of action for negligence that is generally available in the Nevada courts cannot lie in cases such as the present one, and Plaintiff is correct that the statutory remedial scheme does not provide an avenue to obtain the relief he requests. It is simply a grant of regulatory power to the Commissioner. The section of Title 57 entitled "Violations; Remedies; penalties" provides for civil and criminal penalties imposed by the state, but it does not provide for any private damages at all. Nev. Rev.Stat. § 695C.350. Defendants admit this. (# 14 at 26:1–3). Although it is questionable that a duty of care exists in the common law for an insurance provider in selecting and monitoring a health care provider, the statutes at issue here appear to create such a duty under Nevada's negligence per se doctrine. And the statutory scheme does not prevent a private cause of action for their violation, because it does not create an administrative avenue for a private party to recover damages. The Court therefore cannot say as a matter of law that Plaintiff has not made out a prima facie cause of action for negligence based on the administrative remedy doctrine. Of course, Plaintiff must still plead the elements of a negligence claim: duty, breach, causation, and damages. *Turner,* 180 P.3d at 1175.

First, Plaintiff claims that the duty owed him was created by the Code, specifically NRS, Ch. 695G and NAC, Ch. 695C. One relevant regulation is as follows:

1. Each organization shall establish a quality assurance program which consists of a method for analyzing the out-

comes of health care, peer review, the collection of health care data and appropriate recommendations for remedial action.

2. The program must be designed to direct, evaluate and monitor the effectiveness of the health care provided by the organization.

3. The organization shall maintain a written description of its program which describes the specific actions that will be taken to ensure that the quality of health care provided to members is adequate and the personnel responsible for such actions. The actions may consist of a particular study or methodology for determining the quality of health care.

4. The organization shall inform each provider of health care of the organization of the manner in which the quality assurance program operates.

5. The organization shall provide the necessary staff to implement the program and evaluate the effectiveness of the program.

6. The organization is responsible for all activities conducted pursuant to the quality assurance program regardless of whether the organization performs the activity or the activity is delegated to another entity.

7. Not less than annually, the organization shall review the continuity and effectiveness of the program and any proposed findings of the quality assurance committee. The organization shall take such actions as necessary to improve the program.

Nev. Admin. Code § 695C.400(1)-(7). The relevant provisions of the NRS provide similar requirements. *See* Nev.Rev.Stat. § 695G.130 *et seq.* Health plan members are clearly intended to be protected by these statutes and regulations, and Plaintiff's alleged hepatitis C infection is the kind of harm meant to be prevented. Therefore, Plaintiff has shown a duty owed to him by Defendants by virtue of these statutes and regulations.

Second, Plaintiff claims Defendants breached this duty when they knew or should have known of the risks of transferring blood-borne pathogens, such as hepatitis B, hepatitis C, and HIV inherent in the Clinics' work; that such risk could be avoided via standard safety protocols such as safe injection practices; that there is a high risk of transmission of such pathogens if unsafe practices are used, such as the reuse of syringes or medication vials; that a failure to evaluate, audit, monitor, and supervise the Clinics' practices in this regard could place their insureds at risk; that the Clinics engaged in such unsafe practices from at least 2004 until February 2008, including reusing both syringes and single-use Propofol vials, reusing other single-use medical equipment, washing multiple endoscopy scopes using a detergent solution labeled for use on a single scope, and reusing bite blocks. (# 1 ¶¶ 26–32). Plaintiff also claims Defendants knew or should have known that the Clinics maintained inadequate records to demonstrate they engaged in safe practices and that they engaged in other fraudulent records-keeping practices. (*Id.* at 33). Plaintiff claims that Defendants did not reasonably conduct quality assurance to evaluate, audit, monitor, and supervise the Clinics, take reasonable steps to stop the unsafe practices or warn its insureds or members, or terminate its relationship with the Clinics. (*Id.* ¶¶ 35–37). Plaintiff has made out the element of breach sufficiently to support a prima facie claim of negligence.

Third and fourth, Plaintiff claims he contracted hepatitis C as a result of Defendants' negligence as detailed above, and that he was damaged as a result by way of medical expenses, economic loss, and pain and suffering. (*Id.* ¶¶ 47–53). Plaintiff has made out the elements of causation and damages sufficiently to support a pri-

ma facie claim of negligence. Therefore the Court denies the Motion to Dismiss (# 14) as to the First and Second Causes of Action.

## 2. Scope of the Implied Covenant of Good Faith and Fair Dealing

■ There is an implied covenant of good faith and fair dealing inherent in every contract whereby no party will do anything that will destroy or injure the right of another party to receive the fruits of the contract. 17A Am.Jur.2d *Contracts* § 370 (2009). Plaintiff's claim is that Defendants attempted to destroy or injure his right to benefit under the contract by unreasonably failing to supervise the sanitation procedures at the Clinics, resulting in his contraction of hepatitis C. This is simply a restatement of the negligence claim in the guise of a bad faith violation of contract. Plaintiff has pled no facts which if true indicate that Defendants intended to deprive Plaintiff of the fruits of the contract. In fact, Plaintiff admits that Defendants complied with their contractual duties by referring him to the Clinics for treatment. His complaint is that they were negligent in performance, not that they failed to perform or that they took actions to avoid performance and cheat Defendant out of the benefit of the bargain. The gravamen of his complaint is that Defendants were negligent.

■ A health insurer's duty of good faith and fair dealing under an insurance contract concerns administration of claims under a policy, not to selection of providers. Although the Nevada Supreme Court apparently has not ruled in the health insurance context, the duty of good faith and fair dealing has apparently only been held to apply to bad faith denial of insurance benefits, *Am. Excess Ins. Co. v. MGM*, 102 Nev. 601, 729 P.2d 1352, 1354–55 (1986), and the duty to defend an insured, *see Allstate Ins. Co. v. Miller*, —

Nev. ——, 212 P.3d 318, 324–25 (2009). Negligence is a separate claim. There appears to be no hybrid tort of "negligent dealing," which seems to be the nature of what Plaintiff asserts here. Although it is an intellectually plausible theory that a breach of the covenant of good faith and fair dealing could result from the negligent administration of a health benefits plan where an administrator negligently selects a poor provider in order to save money at the expense of the insured, thereby depriving the insured (as a third-party beneficiary) of the proper benefit of the contract, allowing a contract-based tort claim premised on a defendant's negligence in executing the contract would blur the line between contract and tort in a way that the Nevada Supreme Court has not done. Therefore, the Court grants the Motion to Dismiss (# 14) as to the Third Cause of Action.

### CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (# 14) is DENIED as to the First and Second Causes of Action and GRANTED as to the Third Cause of Action.